The next case, number 23-1612, Government of Puerto Rico v. Express Scripts, Incorporated, and 23-1613, Government of Puerto Rico v. Caremark's PCS Health, LLC, et al., consolidated cases. At this time, would counsel for Caremark please introduce himself on the record to begin? Good morning, Your Honors. Josh Podol on behalf of Caremark. I'd like to reserve two minutes for rebuttal. Okay. Before your time starts ticking, and these are some questions. I know you're splitting time with co-counsel, but it's some questions I'm going to pose. So in order not to interrupt you, and maybe it'll flow a little easier, everybody take note, because I'd like to hear your answer. That's this, however you want to present them. But I believe there are many, not many, but there are several very similar cases nationwide. I know one in California and Hawaii. So if there's any update as to whether there's more cases. My other question is, I believe this is the first appellate case as to this issue in point. If not, let us know. And then the question I want everybody to answer would be, where do you draw the line as to pleading these matters? Or is there, from your perspective, no possible way that the government can actually plead and not be removed? So those are my questions. So that way you save some time. I don't want to interrupt you. And of course, there'll be other questions, but you may proceed. Thank you, Judge Helpe, and may it please the Court. I can start with a quick update on what's happened and what's happening. There have been three decisions below in this set of cases. The decision below here, a decision in the Central District of California, both of those granted remand. There was a recent decision in the District of Hawaii, which denied the motion to remand. The Ninth Circuit case was argued earlier this month, two weeks ago. There has not yet been a decision. Was the Ninth Circuit remanding or not? The Ninth Circuit was an appeal from a decision remanding. The Central District of California remanded. And was essentially the basis for this case. Let me start this. This was really informative. I think that's important for us to kind of know what's going on nationwide. Thank you, Your Honor. I appreciate it. I want to step back and level set just a bit, because there's a lot going on in this case in the briefing. Just stepping back, pharmacy benefit managers, like my client Caremark, negotiate the net cost of drugs for their health plan clients with manufacturers. Some of those clients are private insurers. Others administer plans for the federal government under the Federal Employee Health Benefits Act, or FEBA. So this is what I couldn't figure out in reading the briefs. They negotiate with private and public jointly. I assume they do that because you get a better result, because you have more bargaining leverage. Exactly. Nonetheless, I didn't see anything in the briefs that said that even though that's more economically feasible, that it's required, and that you couldn't separate the negotiations between private and public. And if that is true, then I don't see why you can't separate them out and have claims just based upon the private negotiations. Sure. So, Your Honor, two answers to that. First of all, you're absolutely right. The reason that PBMs negotiate on behalf of FEBA and non-FEBA plans together is to increase their leverage. The reason you can't pull those apart, as a practical matter, looking backwards for purposes of a disclaimer, is there's only one act. There's only one negotiation. And then the downstream net cost that comes out of that negotiation flows into formularies, which then flows into the prices that are paid. So you couldn't go back and say, we're only challenging the non-FEBA part of this negotiation, because there's no such thing. As to whether it could be done and whether there's some sort of direction, first of all, the government hasn't challenged acting under, or indeed, causal nexus, except for its disclaimer, or colorable defense. But even setting that aside, the cases are clear, starting with Moore in this circuit and, frankly, going through the other circuits, Isaacson from the Second Circuit, In re Public Defender from the Third, and it goes on. The cases are clear that the federal officer doesn't have to direct exactly how you do something. They have to give you the overall direction, do this act, but they don't have to direct the precise conduct. So the issue, or from that argument, I would assume your argument is that any time your client is sued, there's removal of jurisdiction, no matter what the government tries to tailor the complaint. Well, Your Honor, not as to everything, but as to what the Commonwealth characterizes at JA-41 in its complaint as the larger unfair and deceptive scheme of rebate negotiations. I think that's right, because... But that type of claim, Your Honor, your view would always be removable, no matter what. There's no exception. It's kind of like a straight blanket rule. I think that's right. Under Moore, and this gets to an argument that I do want to highlight. It was in our briefs at pages 43 and 44 of our opening brief, and 24 and 25, yes, of our reply, that even if you were to credit the government's disclaimer, under Moore, the FEBA and non-FEBA negotiations are at the very least connected and associated with each other. You don't have to show some sort of direct causal nexus. And so I think that's right, Judge Helke, that in this context, that's true. That isn't to say everything Caremark ever does is automatically removed. That's a bridge too far. I guess your example is somebody, if you, Caremark, fires an employee and it's a Title VII claim, that's... Exactly. I mean, under Puerto Rico law, that's not removable, per se, unless it's a federal claim. That's exactly right. But I mean, I think the point Judge Helke's making is anytime you're negotiating with both public and private entities, it seems like the natural sort of logical end of that is, in your position, would be it always qualifies for removal. Anytime that we are negotiating for, that we have negotiated, I want to make sure that we're retrospective. And I think that's an important distinction, because the government, in order to do what the government wants to do, you have to look backwards. I mean, they may want prospective injunctive relief, but they're challenging conduct that has happened. And the government can't somehow waive the fact that that conduct, which under Moore is what you look at, was for both FEBA and non-FEBA plans. They could try to get rid of the relief. But first of all, as I said, under Moore, you look at the conduct, not the relief. And this case shows you why, because any order targeting the practice of negotiating rebates would necessarily affect conduct for FEBA plans. And so there would be a FEBA preemption argument no matter what you did. If this case went back to Puerto Rico at some point, be it summary judgment or otherwise, we would be standing there making the argument that this case is preempted. So I guess if we assume, let's assume, for the sake of argument, we can't separate out the federal and non-federal conduct in the negotiations, does it matter that the revenues could theoretically be separated out? It doesn't, Your Honor, and the reason is because the preemption defense would apply to the whole course of conduct. And that's why fundamentally, to answer the question earlier, that's why fundamentally for this species of claim, and I want to be clear, because it's not as sweeping as the California court wrote and then the court below repeated. It's not that sweeping. It's not that absolutely everything my client ever does gets into federal court. But for this particular course of conduct, given where it is, and this is in the middle of a very complex regulatory scheme that is government mandated and where if we weren't negotiating rebates for the government, somebody would have to do it because the whole purpose of the scheme is to put the government on the same plane as private insurers. So you're in a position where, yes, if the challenge is to rebate negotiations, given the connected with, to, or associated with standard, there is not a way to make a disclaimer broad enough. But even if there were, this disclaimer isn't it, and I do want to make sure that I get to that. There are two key reasons. First of all, the disclaimer is circular. As this court makes clear and more, you need to take government conduct or conduct for a federal officer out of the case. This disclaimer doesn't do that. It purports to disclaim relief, and then the parties disagree about what it means for relief to be related to FIBA. But under your view, there's no way to amend the complaint because you, your client, would always be considered a federal officer. So there's no way for plaintiffs to ever file a complaint for this relief. Well, that's not true. I mean, this case is a question about where this case goes forward, not whether. So I agree with you that I don't think there is a way they could craft a disclaimer that would get them out of federal court. The closest they could come, Your Honor, would be saying something along the lines of, we are not, we will not allege that any negotiation involving a FIBA plan caused in any way an increase in insulin prices. They're never going to do that because up until 2019, I believe all or virtually all negotiations by Caremark PCS were both FIBA and non-FIBA. They were for both. And so if they made the kind of disclaimer that would get them close, and by the way, I'd say they still don't get there, but if they made the disclaimer that would get them close, they would have disclaimed away their whole case, which shows you why this case belongs in federal court. Okay, thank you. Do we have to address the threshold question of whether the conduct here, or your client's conduct, give rise to federal officer removal? You mean whether it meets the three elements? I'd say no, Your Honor, because the government hasn't challenged it. Now, if Mr. Bogart stood up and challenged it, I'd be happy to address it, and I would just add that under a consistent and unbroken line of precedent, circuit courts have held that PBMs act under a federal officer. The colorable defense would be a risk of preemption, and the nexus is connected or associated. So I don't think you need to address it because they haven't raised it, but if you did, I think we would win. Okay, thank you. Let's hear, then, from Mr. Scherer. Counsel, please introduce yourself on the record to begin. Good morning, J.R. Scherer for Pellant Express Scripts, Inc. I'd like to request two minutes for rebuttal. Okay, you may. May it please the Court, Express Scripts is the pharmacy benefit manager engaged by the Department of Defense to administer the prescription drug benefit under the federal TRICARE program. Puerto Rico's disclaimer is inadequate to sever the relationship between the conduct it challenges and Express Scripts' federal obligations. Even the expanded disclaimer, Puerto Rico Advances on Appeal, does not foreclose liability for conduct that impacts, that has an effect on Express Scripts' performance of its obligations to the Department of Defense. So you would concur with a co-counsel that there's really no way for Puerto Rico to disclaim this. You're going to have to go to federal court no matter what. Well, I think it's unlikely, although I would make this distinction, I think, Judge Helpe. The central problem with respect to Express Scripts is different than the central problem. Express Scripts discharges its federal duties in the administration of TRICARE. And one of its central obligations is to use a federal benchmark for that activity. And that federal benchmark is the wholesale acquisition cost. It's based on the wholesale acquisition cost or the WAC, what Puerto Rico calls the list price. So what you're saying about this, this is sort of the sort of case that there's like an important federal interest involved no matter what, it would be removable under, you know, federal official removal or even under a rising under. Because the federal court has to construe that. It's part of a federal claim. No, it's intrinsically tied to a federal claim. Well, the basis is a federal officer removal. I don't know that we're getting into a preemption. No, that's the only basis. But it seems to me what you argued, that this is kind of the Smith doctrine, that it's inherently, you know, inherently federal in nature no matter what. Well, respectfully, I don't know that we would go quite that far, Judge Helpe. I think Judge Helpe and your brother counsel said it would necessarily raise a federal preemption argument. So I think that's what my colleague is getting at, a preemption defense. Yes, Judge Thompson, I think it does necessarily raise a preemption defense. But I think the reason it raises a preemption defense is that while Puerto Rico has attempted in this case to disclaim from its damages calculation individual adjudications, it's trying to treat the case like healthcare venture partners, which was a case for reimbursement of claims that arose, claims lower case C, claims for individual benefits, reimbursements, some under federal plans, some under non-federal, and they got to pick and choose. That's not what this case is. The central challenge that Puerto Rico is advancing is not that individual adjudication of TRICARE beneficiary claims is unlawful, that we overcharged someone, that we built someone. The central underlying allegation is that we used a WAC. We used a federal benchmark that was inflated, manipulated or distorted. These are allegations directly from the complaint and from the prayer for relief. And so if Puerto Rico is saying that what Express Scripts is being held liable for, what they want to actually challenge, is a manipulation of that benchmark, well, then, yes, that claim absolutely entitles Express Scripts to go to federal court and advance, as Judge Thompson noted, a preemption defense as well as a federal contractor defense, government contractor defense. Does that answer the court's question, Judge Helby? Yes. So the district court conflated Express Scripts removal arguments with Care Marks. Express Scripts never argued that we're acting under a federal officer when we administer non-federal commercial contracts or adjudicate claims under those contracts. And we differ from Care Mark in that respect. We only ever asserted below that we act under a federal officer in our administration of TRICARE. And there is no serious dispute that we act under a federal officer in that regard, and Puerto Rico doesn't challenge it. One of these obligations is to use this benchmark, the wholesale acquisition cost, which is set by manufacturers, and to be sure Puerto Rico absolutely is challenging that conduct. Conduct relating to setting or increasing the WAC. I'll direct the court to paragraphs 135 and 141 in the complaint, to paragraph 21 in the amended complaint, and to the prayer for relief at section G, where Puerto Rico alleges that Express Scripts participated in a scheme to manipulate, distort, and inflate that benchmark price, and it seeks maximum civil penalties for what it calls each and every violation. Now, what constitutes each and every violation of the Fair Competition Act is yet to be determined. But whatever it is, it is not disclaimed by Puerto Rico. Whether Puerto Rico seeks damages for alleged overpayments on individual TRICARE adjudications or not, we still have to use, Express Scripts must use, that federal benchmark that Puerto Rico says is artificially inflated. Can I jump to the disclaimer? What test applies to the question of whether a disclaimer is effective, and is there first circuit precedent that you would urge us to look at, or do we have to look out of circuit? The cases are uniform as to the effectiveness of a disclaimer. It really has to go, the cases, I'm sorry, the parties below focus primarily on healthcare venture partners and Doherty, VAO, Smith. The rule is essentially as referenced in those cases, there has to be a specific clear disclaimer, it has to be fact-based, and it has to enable the court, and this is really the key inquiry, it has to enable the trial court to not have to get into a resolution of the factual dispute as to whether the federal defense applies. And so in healthcare venture partners, for example, this was just reimbursement claims, and the plaintiff was free to choose which claims to pursue and which claims to abandon. But here, Puerto Rico has not sought to abandon some of the fundamental conduct that underpins its theory of liability, namely the alleged manipulation of the WAC, the wholesale acquisition cost. And A.O. Smith, the Doherty, VAO, Smith case, actually makes this distinction, that was a case, and Puerto Rico So you're saying that even though there is this disclaimer, when you read the allegations in the complaint, you cannot, by looking at the complaint, separate out the federal claims and the non-federal claims? If, Judge Thompson, if Puerto Rico were trying merely to challenge reimbursement amounts, if it were trying to say that we believe that claims paid or adjudicated for particular members of particular plans were inflated or overcharged, and that were its entire claim, then perhaps, perhaps they could say, following the healthcare venture partners model, that we're only going to seek recovery on the non-federal commercial claims. But that isn't the claim Puerto Rico is advancing here. So the disclaimer doesn't match the claim. The disclaimer might be valid in such a case. It might be able to say, we're not going to pursue that conduct, the adjudication of these claims. But here, where the challenge that's, I'm sorry, the conduct that's challenged is inflating or manipulating or distorting the wholesale acquisition cost, that Puerto Rico has not tried to disclaim. Do you see the disclaimer in this case as starkly different from the one in the Eli Lilly case? Is the, Judge McCauley, are you referring to the California? Yes. So the disclaimer is different. The, to be clear, it's our position that the central district of California erred in her analysis of this same issue, and that's currently up on appeal in the Ninth Circuit, as Mr. Podol mentioned, just heard the argument earlier this month. But the disclaimer is different, and it's different in ways that the court can see just from the initial language used. In briefing, Puerto Rico has tried incrementally to expand its disclaimer in this case. It started by saying, we disclaim claims for relief under a federal officer. Which is just like saying, or I'm sorry, under a federal program, which is just like saying under a federal officer, which courts have largely uniformly rejected. And then in remand briefing, it said, well, we disclaim under federal programs like FEHB and TRICARE. And then on appeal for the first time, it says, well, not only do we disclaim that, but we're also not going to include TRICARE or FEHB claims in our damages calculation, and we'll try to tailor our injunctive relief. And the problem with these disclaimers is that even as they incrementally expand, they don't get out of the same fundamental artful problem, which is that they don't meet the conduct that's being challenged. Thank you. And you have rebuttal. Let's hear then from the Governor of Puerto Rico, Mr. Bogart. Please introduce yourself on the record at the beginning. Your Honor, I think you and I both have a problem with having our last names frequently mispronounced. Bogart. Bogart. Yes, may it please the Court, Louis Bogart for Plaintiff Atelier of the Commonwealth of Puerto Rico. Please proceed. Thank you. I'd like to start, Your Honor, with the questions you asked at the top, because I think my answers slightly differ from my colleagues on the other side. We think there are far more than three holdings on this issue. There are three holdings specifically in the insulin negotiation context, the California case, the Hawaii case, and the decision below here. But both in our brief and in the 20HA letter we submitted on Friday, I believe, we identified a number of additional cases in the opioid litigation context, which are similar in that they have to do with the course of conduct of the defendants in establishing, demanding rebates from opioid manufacturers in order to put favorable placement on those products, on their formularies. They're, again, not, you know, they're public nuisance cases, and in every one of those cases the courts have likewise ordered remand. I'm speaking specifically about Ohio, Ex Rel Yoast v. Ascent Health Services, a second California case, California Buy and Threw Harrison v. Express Scripps, and then the two cases from last month in New York, the Westchester County case and the Nassau County case. So the only case in the district level to maintain jurisdiction is Judge Kobayashi's case in Hawaii right now? That is correct, Your Honor, and even in that case Judge Kobayashi found that Express Scripps did not have, had not validly asserted a federal officer jurisdiction, but did find that Caremark, because it negotiated jointly, met the test, although I would note that Judge Kobayashi was sufficiently uncomfortable with that conclusion that the court wrote that that was based on the current record before the court, and if... he did this argument in the face of a disclaimer. We think this is really a very easy and straightforward case. There is no question, the law is clear, that a plaintiff suing in state court a private party under state law that does some business with the federal government can avoid removal jurisdiction under the federal officer removal statute by expressly disclaiming any claim against the defendant for any work carried out on behalf of the federal government. That is what Puerto Rico did here. So Puerto Rico says that, but Brother Counsel says that is not what the complaint alleges as far as cause of action, and that you cannot separate the negotiation, the private negotiations from the public negotiations, so that the district court on remand would have to make those findings. I don't think that's right, Your Honor. First off, again, I think we need to distinguish between Caremark's position and Express Script's position here. It's only Caremark that talks about the joint negotiations. We think they're engaged in semantic twists and turns trying to read this case, this disclaimer, narrowly. The disclaimer says we are not seeking any relief bringing any claims related to Caremark and Express Script's work in connection with federal health care programs. That's what it says. Now, that is not the same thing as the circular case law that opposing counsel were referring to. The circular case law is when someone writes a disclaimer and uses the language of the federal officer removal statute and says we disclaim any claim arising under work conducted on behalf of the federal officer, et cetera, et cetera, where essentially the disclaimer attempts to simply parrot the language of the statute, and the court then has to analyze whether the statute applies in order to decide whether the disclaimer covers the relevant conduct. That's not what we did here. We said, and the government of Puerto Rico said, Medicare, we're not pursuing those claims. Medicaid, we're not pursuing those claims. Tricare, we're not pursuing those claims. The federal employee health benefit program, we're not pursuing those claims. The disclaimer is quite explicit that the case is limited to the inflated prices paid by private health plans and private citizens who have to purchase their drugs based upon the inflated wholesale acquisition cost that resulted from this course of conduct between the manufacturers and the PBMs. But they're saying that the manipulation of the cost can't be divided between private and public. That's what they're saying, Your Honor. Let me start with making an aside to a question I believe Judge Montecalvo asked one of my colleagues, which is the three-part test, because I think the answer you got was incorrect. The three-part test is relevant here, but the three-part test needs to be applied in light of the disclaimer. And while we can, I might even be prepared to concede that because of the way the defendants choose to negotiate, there is a relation between the private and the federal conduct here. But the other two elements of the test are clearly not met in these circumstances. As the district court found, you can't say that conduct that the defendants engaged in on behalf of their private clients arises under a federal officer. So if we have excluded, through the disclaimer, their behavior on behalf of the Department of Defense and OPM, then the only conduct is conduct not arising under a federal officer, and they don't meet that element of the test. Likewise, the third step in the test is, do they have a colorable federal defense? Well, the colorable federal defenses that they assert involve a government contractor and preemption under specific federal statutes related to TRICARE and FEBA. So again, if we have excluded from the litigation claims based upon their government contracts or claims based upon their work for FEBA or for TRICARE, then they don't have a colorable federal defense because the federal defense would not apply at all to their conduct vis-a-vis their private health care clients. Did you brief that first part of the test for us? It seems like we're all skipping past the official conduct. Well, we talk about it in the brief, Your Honor, I think primarily in the context of the district court decision, because the district court speaks directly to that. The claims here are strictly limited to non-federal programs, which is a discrete and readily identifiable category, whose membership does not require the state court to consider the contours of the federal officer removal statute. That's the district court quoting health care ventures. Defendants cannot reasonably claim that the actions they took with respect to non-federal contracts were taken on behalf of an officer of the United States and under color of office. I mean, that is part one of the test. Now, I think there would be an argument that even if we didn't have the disclaimer, they wouldn't meet that test, because none of the federal statutes they're talking about provide instructions about how Caremark and Express Scripts are supposed to conduct these negotiations. If you read in their briefs all the descriptions of what they have to do, well, TRICARE does say you have to use our formulary, but they provide like three pages of OPM regulations, which basically say one, and first I should note, Caremark doesn't even have a contract with OPM, or it has a contract with private health plans that themselves have contracts with OPM. But all it says is if you hire a PBM, and if the PBM negotiates rebates, those rebates have to be passed along. But it doesn't in any way, shape, or form dictate the scope of the negotiation. So I think we would even have an argument that the statute doesn't apply if we didn't have the disclaimer, but we don't have to go there, obviously, because we do have the disclaimer. We said we're just not going to worry about those questions. We're only pursuing these claims on behalf of the private plans. So yes, Your Honor, I completely agree with you. You can't overlook the acting under piece of the equation, and I think it's it and the color of the federal defense piece are dispositive here. I'm sorry, Judge Thompson, I've now lost track of your question. I'm afraid I didn't respond to it. Okay. If it comes back to you, I would be happy to try to answer it, and I apologize. I started on digression, and I never got back to myself or to my point. The defendants want to make the argument that this is an indivisible course of conduct, that they go in and negotiate these things jointly. But as both the court below and the California court said, that argument just proves too much. It's, I think, precisely the point, Judge Halpern, that you made in your questions to opposing counsel. Their position essentially is any time a suit of this sort would be brought, there can be no disclaimer because if they choose to jointly engage in behavior on behalf of their federal clients and their non-federal clients, we can't sue them in state court for their actions against non-federal clients, even though that work is outside the scope of anything they're doing pursuant to their relationship with government contractors. And we just think that's a bridge too far, and obviously we're not alone as courts in virtually all these other states have reached the same conclusion. Judge Halpern, you also asked about appellate cases. As noted, the California case was argued two weeks ago. The other case that I think would have been very instructive, but that I keep, I've been checking the First Circuit docket for the last, roughly every day for the last month. It's been about eight months, I think, since the Maine and New Hampshire PFAS and AFFF cases were argued, and they raise, as the briefs reflect, a very closely related argument. I'm sure my colleagues will tell you that it's utterly distinguishable. In fact, I think Karen Mark tried to make that point in the letter, in their response to our 20HA letter yesterday. But in those cases, states in this circuit, New Hampshire and Maine, have sued 3M for PFAS contamination. 3M also makes AFFF, which is a closely related chemical product that they make for the military. Maine and New Hampshire expressly disclaimed that they were seeking any relief for AFFF contamination, but only for the private PFAS contamination. Both the district courts in Maine and New Hampshire found that disclaimer effective to prevent, to deny a basis for federal removal of jurisdiction. And since that time, courts in South Carolina and Maryland have joined them in that same holding and remanded those cases. But unfortunately, your colleagues have been taking their time in resolving the appeal in those cases, so I can't set it to you as appellate authority on this particular topic. I know we've covered this ground before, but I think this may go back to some of Judge Thompson's questions regarding the divisibility, right? The fact of the matter is that the plaintiffs here negotiated for both federal and non-federal health benefits programs at the same time. At least, I think Caremark says they did that. I don't believe Express Scripts has argued that they negotiated for the TRICARE along with other parties. Let's just accept that, just for the sake of the question, they negotiated at the same time and those negotiations could have influenced the federal program involved. And if they did happen simultaneously and were linked in time and subject matter, how could the non-federal component be singled out? Well, Your Honor, I think there are several answers to that question. First, if we focus on the relief side of the case, clearly we can seek relief only for pharmacy expenses paid by non-federal programs and non-federal clients. And as opposing counsel noted, we've also explicitly said any forward-looking declaratory injunctive relief could be tailored so it only limited what the defendants could do prospectively with regard to negotiating on behalf of their non-federal clients. The defendants have repeatedly made this argument and in fact this comes up in all those PFAS, AFFF cases, that you can't pull these things apart, like groundwater contamination is groundwater contamination, how do you tell? What the courts have consistently said is well, we assume that the state court will honor the disclaimer when the case goes back and the burden is going to be on the plaintiff to disentangle those things and to show that they can establish liability based upon the private non-federal conduct. And if they can't, then they may not be able to prevail on their claims. There's no question this will be a complicated question on how you disentangle the effect of negotiation. I mean, I assume an economist can look at the share of Karamark's caseload that is federal on the share that's not and draw some conclusions about the extent to which the negotiations on behalf of the private clients led to the amount of rebates, which therefore led to the increases in the wholesale acquisition costs. Do we look at the face of the complaint to make that determination? I mean, if we look at the complaint itself and conclude based upon the pleadings, the pleadings that the plaintiffs have chosen, that you can't disentangle them? Sure. I don't see why that would follow, Your Honor. The pleading, the complaint, and I should say, you know, many of the other cases in this context have been cases where the disclaimer didn't even get added until after the case was removed, which adds a whole different element to the analysis. Here, starting from the original complaint in this action, plaintiffs have had this disclaimer that said, we're not suing about federal programs. So from the beginning, we were saying the work on behalf of federal programs is not part of this litigation. But if on the day, and this goes to the negotiation piece, which I know you said is distinguished between the two defendants, but if on the day of negotiations, the person negotiating is wearing two hats, how do you separate it out? Well, and Your Honor, that's why I said I might concede that the related two-piece of the three-part test, that if they're wearing two hats, maybe it is related, but their negotiations on behalf of the nonfederal clients are not acting under a federal officer, and their negotiations on behalf of their nonfederal clients are not subject to any federal defense. And so to the extent that we have cabined the scope of our claims and the relief we seek to only that behavior, now, as I said, we're going to have to distinguish that behavior from their behavior on behalf of their federal clients. But that is a more than sufficient basis for a valid waiver that allows the Commonwealth of Puerto Rico to litigate in its own state courts. But they say that a federal defense would reasonably be predictable based upon the pleadings. Well, that's what they said, Your Honor. The question is, should we consider that or not? Well, Your Honor, I don't understand how a federal preemption defense that is limited to TRICARE or FEBA can apply to conduct on behalf of nonfederal private health care plans that they negotiate on behalf of. Likewise, I don't understand how a government contractor affirmative defense can apply to conduct not on behalf of a company when it's not acting as a government contractor. The saying that they have a colorable defense doesn't make it so. They say it applies because of the two-hat theory. Right. But it doesn't apply to their actions on behalf of, this is exactly the point that the California court made when they said essentially that this is bootstrapping, right? That they're trying to say, well, because we have a defense when we were negotiating on behalf of FEBA, I apologize, I see my time is up. Can I finish my answer? No, please, and I have another question for you. May I answer that one as well? Because this is bootstrapping. They're saying that because we have a federal defense with regard to our work on behalf of the federal health care program, and because we, in our own discretion, choose to negotiate on behalf of that group along with our non-federal clients, we get to invoke this federal defense and this federal jurisdiction with regard to our non-federal clients. And as Judge Helpe pointed out, under this theory, they would always be able to remove, as long as they are engaging in some similar conduct on behalf of both their federal and their non-federal clients, and we think that's a bridge too far and goes far beyond the scope of what the federal officer removal statute was intended to reach. There's just no, the interests of the federal officer removal statute were to protect federal interests from historically hostile state courts. The federal programs have no interest in this, the federal government has no interest in this case if we have disclaimed any attempt to seek liability based on conduct related to the federal programs. Let me ask you, might be a little long question, so I'll break it up. I assume, just looking at the briefs, what happened here was the case was removed by the defendants, you filed a motion to remand, and approximately three months later, Judge Garcia-Gregory granted the motion, right? I don't remember the time period. Yes, almost three months, but the motion to remand and the removal, that decision was based on the allegations and the removal, correct? There was no discovery or nothing, correct? That is correct. Okay. Now, my question now, my second part of the question is, I'm thinking in my prior life as a district judge, the counterpart to the statute, and it's actually cited in the case for Arizona v. Maypenny, that's when it's a criminal removal, but in my experience, and again, not that it happens very frequently, but the times I had as a magistrate judge or in a district court, or even when I practiced, when we had those issues about removal, the judge would at least have some sort of evidentiary hearing or allow some, in the criminal case, it's not discovered, it's usually an evidentiary hearing. But my question is, and because, again, this is a jurisdictional issue, wouldn't, and I'm asking the question both to you and opposing counsel, wouldn't it be wise, perhaps, if this case were to be remanded to the district court, for the court to do some jurisdictional discovery, because what defense counsel are alleging, it's really factually based. So I don't know if you get my question, but again, in the criminal context, that is usually, it could be a short hearing, it could be a one-day hearing, but there's a lot of allegations that, if correct, perhaps there is removal, but perhaps there's not. And again, we're basing everything on just allegations. Sure. Your Honor, that is certainly an option, and indeed, in the Hawaii case, Judge Kobayashi indicated that the issue of removal might be reconsidered after jurisdictional discovery. There's been some subsequent developments in that case, so that's not going to happen anytime soon, but the court clearly contemplated that possibility. I'm not sure it's necessary here. The only factual evidence that defense Because this was really treated as a, nobody sort of disputed what anybody said, it was a legal issue, and I think what's really striking, Your Honor, is if you look at the affidavit that Caremark submitted with the removal papers, because all their affidavit says is, we have these contracts with FEBA health plans, and we choose to negotiate jointly on behalf of those health plans and our private clients. There is, at no point do they suggest that they were in any way, shape, or form compelled by the federal government to link the negotiations on behalf of But that's my question. Wouldn't some limited jurisdictional discovery reveal, maybe they're right, and it's so intertwined, and you might even say, well, we're going to have to stay in federal court, or it might reveal it's, you're right. That may well be right, Your Honor. My point is the time for that, that they had the opportunity to do that when they submitted a declaration in support of their petition for removal, and I assume if they had that kind of evidence, they would have put it forward. But again, I'm going, since this is a jurisdictional issue, even us on appeal can bring the issue up. So that's why. Yeah. Okay. Thank you. But their response to that, when I asked that question, was it doesn't matter that they weren't compelled to do it. They say that they in fact did it, and therefore it can't be undone. It can't be undone, Your Honor, but if we only seek relief for the effect of that conduct on private health plans, and if we only seek injunctive relief going forward on behalf of private health plans, or their conduct with respect to private health plans, then the fact that this is a historical reality of what happened in the past shouldn't matter, because there will be no implications for the federal health care program, and again, there's been no suggestion that they were somehow compelled by federal law to link those two, so there's no suggestion the federal government relied upon, was counting on that happening in some way, or that it's a fundamental part of their work with the federal health care programs. So for all those reasons, Your Honors, I respectfully request that you affirm the order of remand to the Commonwealth Courts. Thank you. Thank you. Rebuttal. Both of you have two minutes, so please identify yourself. Thank you, Your Honor. Josh Podol again. I want to start with the question you asked about facts and discovery. One certainly could order jurisdictional discovery. I think the fact that that is coming up and that we're all talking about what the facts are, and indeed, my friend on the other side mentioned expert testimony and expert discovery and needing to pull things apart with experts, that is exactly the kind of fact question that under the federal officer statute is to be resolved by federal courts. And this leads to this. That's what I was talking about, the criminal removal of Arizona Maypenny removals. The federal court decides that as a factual issue. Here it decided the issue, but it's basically based on pleadings, not again. And again, jurisdictional discovery could go either way. I've seen in criminal cases, again, it's usually a hearing, short hearing, but either one way or the other. Exactly. But the fact that there is a factual dispute as to this disclaimer and as to what you'd have to do with this disclaimer proves that the disclaimer doesn't take the case out of federal court. As you say, maybe the factual discovery would show that it would. I would be very surprised if that were the case. But at least the case, in your view, should have stayed in federal courts of federal discovery or some other more factual ruling. And again, at a minimum. Not simply as a general matter of law or disclaimer law. At a minimum. So two more quick points. First, I want to make sure that our argument is clear. Caremark does not say that it acts under the government when it is negotiating or doing work for nonfederal entities. What we say is that we act under when we negotiate for both, or as Judge Thompson put it better than I did, wear two hats. And it's not a matter of saying our defense applies to nonfederal entities. It's a matter of saying that a federal preemption defense would apply to what the Commonwealth at page 41 of its complaint calls, quote, the larger scheme. Because that, quote, scheme necessarily implicates both. The last point I would make is that there is a simple way, I think, if I may finish this answer. I know I'm almost out of time. But I think there's a simple way to distill all of the various cases on disclaimers. Including the cases which aren't strictly in this action that my friend on the other side mentioned. The opioid cases and whatnot. If the disclaimer takes federal conduct fully out of the case, such that there aren't federal issues for the lower court to resolve, then those are the disclaimer's court's credit. If the disclaimer instead leaves federal issues in the case, as this one does, namely the scope of what component of our conduct is, quote, related to FEBA, then that disclaimer is invalid because you would have state courts deciding federal issues. Let me give you an analogy. And this might not be the best analogy. But in the criminal context, the typical analogy is, let's say there's a D agent. He's doing undercover work. He goes to a bar. He gets in a fight. And he kills somebody. And there's a hearing. It's probably federal removal jurisdiction. He will have to be prosecuted in federal court. On the other hand, if the D agent is in a D agent convention in New Orleans, for example, and after hours he's not working and he takes his gun and he gets drunk and starts fondling a bartender and then somebody, and there's a fight or something, after a hearing there's no jurisdiction. So that's why my analogy is, wouldn't that jurisdictional discovery or limited hearing, you know, be important for us to know if there's jurisdiction or not? And obviously it would have to be remanded for that purpose. Yes, it's fundamental to federal officer, to all the federal officer cases, that the federal courts are the one that is the place to decide factual disputes that relate to federal offenses. And incidentally, your analogy about someone committing a murder are the old federal officer cases, Soper and Davis and whatnot, that's sort of the, what would you say, the old, the originals. And with that, we'd ask that you reverse, remand and recall the mandate, ask that the mandate be recalled. Thank you. Last but not least, counsel, Mr. Scher. Please reintroduce yourself on the record. Thank you, J.R. Scher for Express Scripts. To be clear, Express Scripts agrees with Counselor Caremark with respect to the relevant standard. It's just the application to our fact pattern is different for Express Scripts. And we want to reinforce that the court seriously considered this distinction as an additional basis for asserting federal jurisdiction. Our defense does not and never has, I'm sorry, our defense, our grounds for removal never has asserted that we are acting under a federal officer when we are engaged in adjudicating non-federal commercial claims. Our defense stems from our duty to use the federal benchmark for the federal government that is the same benchmark that this plaintiff is challenging as having been manipulated, distorted and inflated. But if that is so, then your removal would not be federal officer removal, correct? It would be federal question removal. Well, federal officer, I mean, if we go into it, I mean, federal officer obviously is a subset of a type of federal question, a particular application. But we're not seeking, the issue is that our preemption defense under TRICARE, that the TRICARE statute and implementing regulations say that contrary state laws will not be effective, they shall not apply to TRICARE activity, does not necessarily go to the entirety of Puerto Rico's claim. We accept that there are portions of conduct, there are portions of relief that Puerto Rico seeks that don't directly implicate or may not directly implicate federal conduct. The issue is that the entirety of the claim really does require places directly at issue conduct that Puerto Rico says manipulates a federal benchmark. And so if that's something they're going to try to prove, if they're going to try to, if I can finish. If they're going to try to peg liability to conduct that it says we manipulated a federal benchmark, then that's an issue that we get to litigate in federal court. But again, that would be sort of like Smith arising under jurisdiction, because you're questioning, and I don't know if it's Smith or the case that came after that, those old cases, but somebody was questioning in state court the validity of some federal government issued bonds, and that's really inherently federal question. I think that's the argument that you have for removal. It's a, you know, whatever it is, they're challenging an inherently federal benchmark. And insofar as Puerto Rico has chosen, I mean, of course it's no displeasing, right? So Puerto Rico has framed its claim currently as you manipulated the federal benchmark, and that manipulation has had downstream impacts. But presumably Puerto Rico could bring a claim that we did something else that caused individual consumers to overpay. And so all I'm really trying to say is that... So what Puerto Rico would have to say, we're not challenging those benchmarks, we're challenging X, Y, or Z. That's exactly right. Were Puerto Rico to come out and say we are not challenging conduct that is alleged to have modified or altered or changed the list price, then there's a chance. Maybe that disclaimer would be valid. We'd have to see it, and we'd have to compare it against the conduct that's actually being challenged by the territory. But that's not this case. Well, thank you very much, all counsel. I guess we feel like we're back in law school. Okay, have a great day. Court is adjourned until tomorrow.